## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,   CASE NO.: 00-6301-CR-ROETTGER

    Plaintiff,

v.

IGNACIO RODRIGUEZ,

    Defendant.

_____/

### DEFENDANT'S MEMORANDUM
### REGARDING SENTENCING ISSUES

**COMES NOW**, Defendant IGNACIO RODRIGUEZ (hereinafter "RODRIGUEZ"), by and through his undersigned counsel, and submits this his Memorandum regarding open issues to be heard at sentencing.

### ISSUES

I. Whether IGNACIO RODRIGUEZ should be charged with two criminal history points based upon the facts and circumstances surrounding his prior arrests?

II. Whether IGNACIO RODRIGUEZ should be afforded the safety valve reduction pursuant to §5C1.2 of the Federal Sentencing Guidelines?

III. Whether IGNACIO RODRIGUEZ should be awarded a reduction in his sentencing based upon his minor or minimal role?

### FACTS

On October 2, 2000, IGNACIO RODRIGUEZ arrived at the Fort Lauderdale/Hollywood International Airport via an airline flight from La Guardia Airport in New York, via an airline flight from Port-au-Prince, Haiti. Upon his arrival at the Fort Lauderdale/Hollywood International Airport, RODRIGUEZ proceeded off the airplane and walked to the baggage claim area of the airport to retrieve his baggage. Accompanying RODRIGUEZ on this flight was the owner of the



cocaine, LONZIE NICHOLS, who was sitting directly behind him. RODRIGUEZ stood near the baggage claim carousel and waited for his bags to arrive on the baggage claim belt. When the bags did arrive, RODRIGUEZ retrieved same. At this time, Detectives who had surveillance on the bags approached RODRIGUEZ and asked him various questions. The Detectives began to search the two bags in RODRIGUEZ' possession and the search resulted in the discovery of several packages of cocaine. It was at this time that RODRIGUEZ was placed under arrest.

During the post arrest interview, RODRIGUEZ made it clear that he was working for a Haitian man in Miami, Florida named HAROLD DELINOIX and that RODRIGUEZ was going to be paid $3,000.00 to travel to Haiti to pick up narcotics and bring same to South Florida. RODRIGUEZ also informed the detectives that a Haitian male named LONZIE NICHOLS was also involved in the organization to import the narcotics at issue and that MR. NICHOLS arranged the trip to Haiti, set up the transaction and traveled with RODRIGUEZ from Haiti to Miami, Florida. MR. NICHOLS used RODRIGUEZ as a drug courier but he sat directly behind him on the flight from New York to Miami, keeping a close eye on him. MR. NICHOLS avoided capture at the airport.

On May 21, 2001, RODRIGUEZ entered a plea of guilty to the one-count Indictment, charging him with possession with intent to distribute in excess of 500 grams of cocaine, in violation of 21 U.S.C. §841(a)(1)

### ARGUMENT

### I. WHETHER IGNACIO RODRIGUEZ SHOULD BE CHARGED WITH CRIMINAL HISTORY POINTS BASED UPON THE FACTS AND CIRCUMSTANCES SURROUNDING HIS PRIOR ARRESTS

The Government argues in the Pre-Sentence Investigation Report ("PSI") herein that RODRIGUEZ has a prior criminal history, which allows the Government to charge two criminal history points to RODRIGUEZ. The Defendant argues that pursuant to §4A1.3 of the Federal Sentencing Guidelines, RODRIGUEZ' past offenses as referred to in the PSI clearly and

significantly over-represent the seriousness of RODRIGUEZ' criminal history as well as RODRIGUEZ' likelihood to commit further crimes and therefore either one or zero criminal history points should be charged to RODRIGUEZ, qualifying him for criminal history category I.

The Government in the PSI refers to two misdemeanors allegedly committed by RODRIGUEZ, which according to the Government gives RODRIGUEZ two criminal history points. The first misdemeanor the Government refers to in the PSI involved a charge of petit theft stemming from RODRIGUEZ' actions in 1998 when he was arrested on charges of petit larceny/theft. The facts of the case as stated by the Government in the PSI involve RODRIGUEZ being observed placing a bag of corn nuts valued at $1.19 in the front of his pants and then proceeding past several cash registers without paying for the $1.19 item. RODRIGUEZ was arrested and his adjudication was withheld. His punishment involved no jail time and required RODRIGUEZ to perform community service.

The Second misdemeanor the Government refers to in the PSI involved a possession of marijuana charge in 1999 wherein RODRIGUEZ was a passenger in a vehicle that contained a "joint". RODRIGUEZ clearly was not in possession of the contraband at issue and further was unaware that if he pled guilty to this charge he would be affected by said plea at a later date in time. RODRIGUEZ was sentenced to two days credit time served for his actions for being in the wrong place at the wrong time.

The Government argues that RODRIGUEZ should be attributed with two criminal history points as a result of the above-described misdemeanors. However, according to §4A1.3 of the Federal Sentencing Guidelines entitled "Adequacy of Criminal History Category", the guidelines clearly allow for a sentencing court to use its own discretion when attributing the actual seriousness of certain crimes to a defendant's criminal history category. The Federal Sentencing Guidelines state in §4A1.3 that:

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes....The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category, and therefore consider a downward departure from the guidelines.

Should it be the case that both criminal history points get attributed to RODRIGUEZ as the Government asserts is the case, based upon the misdemeanors described herein, RODRIGUEZ would be classified as level II in terms of criminal history points, despite the fact that RODRIGUEZ' criminal history is significantly less serious than that of most defendants in the same criminal history category. Section §4A1.3 of the Federal Sentencing Guidelines was written for situations exactly like the one herein. RODRIGUEZ' label as a level II criminal clearly and unequivocally does not come close to representing the type of criminal RODRIGUEZ should be labeled as. The only crimes RODRIGUEZ ever took part in prior to the one at bar, resulted in a total sentence of two days credit time served and community service. RODRIGUEZ' past misdemeanors injured no one but himself and were simply acts based upon poor judgment which were clearly aberrant and distinct from any sort of activity RODRIGUEZ had ever undertook.

Additionally, RODRIGUEZ argues pursuant to §4A1.2 of the Federal Sentencing Guidelines that as to one of the misdemeanors described herein, RODRIGUEZ was never imposed with a "prior sentence." RODRIGUEZ' adjudication was withheld during the 1998 misdemeanor for pettit larceny/theft. According to §4A1.2(a)(1) of the Federal Sentencing Guidelines, the term "prior sentence" means "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." Since RODRIGUEZ' adjudication was withheld, he never received a "prior sentence" pursuant to the Federal Sentencing Guidelines and as such, he can not be charged with any criminal history points pursuant to §4A1.1(c).

A downward departure from the Federal Sentencing Guidelines regarding the attribution of one or two criminal history points to RODRIGUEZ should be granted and RODRIGUEZ should receive either zero or one criminal history points based upon his prior conduct.

## II. WHETHER IGNACIO RODRIGUEZ SHOULD BE AWARDED THE SAFETY VALVE REDUCTION PURSUANT TO §5C1.2

RODRIGUEZ should be awarded with the appropriate adjustment pursuant to §5C1.2 of the Federal Sentencing Guidelines, acknowledging RODRIGUEZ' qualification for the safety valve in this matter. RODRIGUEZ meets all of the qualifications required for this two point downward adjustment.

The Government has argued in the PSI that RODRIGUEZ' past misdemeanors should attribute two criminal history points to him and that RODRIGUEZ fails to qualify for the safety valve reduction. Without reiterating the argument outlined in Issue I herein, if in fact it is determined that RODRIGUEZ' past misdemeanors pursuant to §4A1.3 of the Federal Sentencing Guidelines are such that RODRIGUEZ is afforded either zero or one criminal history point, RODRIGUEZ must be awarded the safety valve reduction pursuant to §5C1.2 of the Federal Sentencing Guidelines. If it is determined that either zero or one criminal history point is attributed to RODRIGUEZ, he will have met all of the criteria pursuant to §5C1.2 of the Federal Sentencing Guidelines and a two point reduction in his sentencing must be imposed. RODRIGUEZ was fully debriefed by the case agent in this matter and has otherwise fully complied with all Safety requirements in this matter.

## III. WHETHER IGNACIO RODRIGUEZ SHOULD BE AFFORDED A REDUCTION IN HIS SENTENCING BASED UPON HIS MINOR OR MINIMAL ROLE

In the case at issue, RODRIGUEZ did not participate in any aspect of the crime except carrying the drugs into the United States from another country. Pursuant to section §3B1.2 of the Federal Sentencing Guidelines as well as established case law, characteristics that would lend

weight to the conclusion that a participant played a minor or minimal role in crime and thus would make a participant less culpable are as follows:

a. The exercise of decision making authority
b. The nature of participation in the commission of the offense
c. The recruitment of accomplices
d. A claimed right to a larger share of the fruits of the crime
e. The degrees of participation in planning or organizing the offense
f. The nature and scope of the illegal activity degree of control and authority exercised over others.

Applying the above test, the court's decision at sentencing should afford RODRIGUEZ with a minimal role. RODRIGUEZ was never a member of the criminal syndicate, as he was recruited because the syndicate knew RODRIGUEZ suffered financially. RODRIGUEZ retained no decision-making authority within the organization and RODRIGUEZ did not choose the dates or flights of travel rather he received the tickets and used same to fly. Additionally, he did not know any of the contacts in the United States other than the person he was recruited by. RODRIGUEZ recruited no one into this scheme and he himself was only recruited into same shortly before his arrest. RODRIGUEZ was never paid the agreed upon $3,000.00 courier fee in this matter. In fact, when RODRIGUEZ was arrested, the agents told him he was nothing more than a severely underpaid "mule".

RODRIGUEZ was simply a "drug mule" in this case. He did not plan any of this activity and was supervised by others the entire time. RODRIGUEZ supervised no one. He was nothing more than a simple courier with no ties to any criminal organization. In fact, the organizer, LONZI NICHOLS, accompanied RODRIGUEZ to Haiti and sat right behind him on his airline flights from Haiti to New York City and then on to Fort Lauderdale. Therefore, pursuant to the Federal Sentencing Guidelines set for in § 3B1.2, the Court should award RODRIGUEZ with a minimal role in this matter because it was evident that RODRIGUEZ was nothing more than a minimal participant in the criminal enterprise's operation.

If this Honorable Court is not inclined to award RODRIGUEZ a minimal role for his conduct herein, it is without question that he is entitled to a minor role in this matter. RODRIGUEZ clearly did not organize the actual plan to import the narcotics nor did RODRIGUEZ have anything to do with the actual distribution of the narcotics. RODRIGUEZ' role in this matter was clearly nothing more than that of a mule.

## CONCLUSION

In sum, IGNACIO RODRIGUEZ should be sentenced without the application of criminal history points, with a downward departure for the safety valve reduction and a downward departure for minor or minimal role herein.

Respectfully submitted,

**Law Offices of Barry T. Shevlin**
1111 Kane Concourse, Suite 605
Bay Harbor Islands, Florida 33154
Telephone: (305) 868-0304

By: _____
Barry T. Shevlin, Esq.
Florida Bar No.: 511587

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via Facsimile and U.S. Mail to Bruce Brown, Esq., Assistant United States Attorney, at 299 East Broward Blvd., Ft. Lauderdale, Florida 33301and via Facsimile (305) 523-5496 and U.S. Mail to: Bonita Abrams, United States Probation Officer, 300 NE 1st Avenue, Suite #315, Miami, Florida 33132 on this ___ day of August 2001.

**Law Offices of Barry T. Shevlin, P.A.**
1111 Kane Concourse, Suite 605
Bay Harbor Islands, Florida 33154
Telephone: (305) 868-0304

By: _____
Barry T. Shevlin, Esq.